**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
BANGOR DIVISION**

| | |
|---|---|
| WE THE PEOPLE PAC; STATE REPRESENTATIVE BILLY BOB FAULKINGHAM; LIBERTY INITIATIVE FUND & NICHOLAS KOWALSKI, | : <br> : <br> : <br> :       CIVIL ACTION |
| Plaintiffs, | : <br> : |
| v. | : DOCKET NO. _____ <br> : |
| MATTHEW DUNLAP, in his official capacity as the Secretary of State of Maine; and JULIE FLYNN, in her official capacity as the Deputy Secretary of State of Maine for the Bureau of Corporations, Elections and Commissioners, | : <br> : <br> : <br> : <br> : |
| | :       *Filed Electronically* |
| Defendants. | : |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiffs, WE THE PEOPLE PAC, STATE REPRESENTATIVE BILLY BOB FAULKINGHAM, LIBERTY INITIATIVE FUND and NICHOLAS KOWALSKI, by and through their undersigned legal counsel, file this civil action for prospective equitable relief against Defendants, MATTHEW DUNLAP, including his successor in office, in his official capacity as the Secretary of State of Maine and JULIE FLYNN, including her successor in office, in her official capacity as the Deputy Secretary of State of Maine for the Bureau of Corporations, Elections and Commissioners requesting emergency, preliminary and permanent declaratory and injunctive relief  prohibiting Defendants from enforcing:

(1) Maine Revised Statute (hereinafter "MRS") Title 21-A, Chapter 11 Section 903-A, to the extent it requires that petitions for a direct initiative or people's veto may only be circulated by a registered voter of Maine;

(2) MRS Title 21-A, Chapter 11, Section 903(A), to the extent it requires that

1

petitions for a direct initiative or people's veto may only be circulated by a resident of the State of Maine;

(3) MRS Title 21-A, Chapter 11, Section 903-A(4)(c), to the extent it requires circulators to sign an affidavit attesting that the circulator was a resident of the State and a registered voter in the State at the time of circulating the petition;

(4) MRS Title 21-A, Chapter 11, Section 903-A(5), to the extent that it requires that a "person or organization that pays individuals to circulate petitions, other than by reimbursing travel expenses, shall provide a list of those individuals to the Secretary of State along with information indicating the method by which the individuals are bring compensated when the petitions are filed pursuant to the Constitution of Maine, Article IV, Part Third, Section 17 or 18;"

(5) MRS Title 21-A, Chapter 11, Section 903-C (1)(D) to the extent that it requires a petition organization to file with Defendants Secretary of State for public inspection: "A list containing the names of all individuals hired by the petition organization to assist in circulating petitions or in organizing, supervising or managing the circulation.  The list must include a statement indicating the method by which the individuals hired to assist in circulating petitions are being compensated. The list must be updated and resubmitted to the Secretary of State when the petitions are filed pursuant to the Constitution of Maine, Article IV, Part Third, Section 17 or 18;" and

(6) MRS Title 21-A, Chapter 11, Section 901-A(2), to the extent that it requires a circulator to make a personal, public identification of his or her name pursuant to the requirement that: "On each page of a petition that contains space intended for voter signatures, the Secretary of State shall include a space at the top right or left corner of

2

each such page to be submitted to the voters, which must be filled in with the name of the circulator collecting signatures on that petition and a unique identifying number…."

2.      The voter registration and residency requirement imposed on circulators of petitions for a direct initiative and people's veto impair clearly established rights afforded to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution of the United States Constitution.

3.      The requirement that petition sponsors identity, by name, paid petition circulators impair clearly established rights afforded to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

4.      The requirement that petition circulators make a public identification of their names to the public impair clearly established rights afforded to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

5.      The United States Supreme Court has established that the circulation of referendum petitions is "core political speech" afforded the highest protections under the First Amendment to the United States Constitution.

6.      The challenged voter registration requirement for petition circulators, state residency requirement for petition circulators, publication of paid circulator names and the public identification of the names of petition circulators severely impair rights guaranteed to Plaintiffs under the First Amendment, as applied to the State of Maine under the Fourteenth Amendment to the United States Constitution, because it limits the number of voices available to carry Plaintiffs' message as well as the right of Maine residents to receive political speech from Plaintiffs and/or impairs the right of petition circulators to engage in anonymous political speech.

7.      Constitutional review of state statutes which impose severe restrictions on rights

guaranteed under the First and Fourteenth Amendments are subject to strict scrutiny review and may only be upheld if they are narrowly tailored to advance a compelling governmental interest.

8.    The United States Supreme Court has already established that a state may not require petition circulators to be registered voters of the state.

9.    The United States Supreme Court has already established that a state may not require sponsors of initiative and referendum petitions to publicly disclose the names of paid circulators.

10.    The United States Supreme Court has already established that a state may not require petition circulators to identify their names to the public as a condition to being permitted to lawfully circulate petitions to the public.

11.    The requirement that circulators of petitions for direct initiative and people's veto must be residents of the State of Maine is not narrowly tailored to advance a compelling governmental interest and is, therefore, unconstitutional.

12.    The State of Maine does not have the authority under the federal constitution to close off its borders to, or otherwise impair the ability of, citizens of other states who wish to submit to the jurisdiction of the State of Maine in order to participate in political speech and to join with Maine residents to advance common political goals within the State of Maine.

## JURISDICTION

13.    Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that district courts shall have original jurisdiction over all civil actions arising under the Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C. §1983 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C. §1983, as Plaintiffs allege violation of rights guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.

14.     Jurisdiction lies in this Court to adjudicate pendent state law claims in this action

under 28 U.S.C. §1367 (a), is authorized by Fed. R. Civ. P 18(a) and is mandatory under the

doctrine of supplemental jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715

(1966).  The pendent state law claims in this action arise from a common nucleus of operative

facts as the federal questions in this Complaint.

## VENUE

15.     Venue is proper in the Bangor Division of the United States District Court for the

District of Maine under 28 U.S.C. §1391 as Plaintiffs WE THE PEOPLE PAC and STATE

REPRESENTATIVE BILLY BOB FAULKINGHAM are individuals and organizations who are

residents of the State of Maine and of this district and Defendants exercise their authority within

this district and maintain their offices within this district and all of the operative acts and/or

omissions have or will occur within this district.

## PARTIES

16.     Plaintiff WE THE PEOPLE PAC as a political action committee registered in the

State of Maine and is currently lawfully circulating a petition for an initiative of direct legislation

prohibiting anyone who is not a citizen of the United States from voting in any election held

within the State of Maine.  Plaintiff WE THE PEOPLE PAC is prohibited by the Challenged

Statutes from employing or using the services of Maine residents who are not registered to vote

as circulators of Plaintiff's petition.  Plaintiff WE THE PEOPLE PAC is also prohibited by the

Challenged Statutes from employing out-of-state professional and/or volunteer circulators to

expand the number of like-minded citizens available to circulate Plaintiff's petition.  Plaintiff

WE THE PEOPLE PAC objects to the requirement to file with Defendant Secretary of State a

list of paid circulators and the method of their payment.  Plaintiff WE THE PEOPLE PAC would

like to hire Plaintiff NICHOLAS KOWALSKI, a professional circulator who is a resident of the State of Michigan, as well as other out-of-state professional circulators to expand the number and quality of circulators circulating Plaintiff's petition in the State of Maine.  Plaintiff WE THE PEOPLE PAC's address is P.O. Box 165, Augusta, ME  04332.

17.    Plaintiff STATE REPRESENTATIVE BILLY BOB FAULKINGHAM is a resident of the State of Maine and is a member of the committee of Plaintiff WE THE PEOPLE PAC and is a supporter of the petition for an initiative of direct legislation prohibiting anyone who is not a citizen of the United States from voting in any election held within the State of Maine.  Plaintiff STATE REPRESENTATIVE BILLY BOB FAULKINGHAM is a member of the Maine House of Representatives currently representing the 136th state house district. Plaintiff STATE REPRESENTATIVE BILLY BOB FAULKINGHAM's address is P.O. Box 121, Winter Harbor, ME  04693.

18.    Plaintiff LIBERTY INITIATIVE FUND is a nonprofit 501(c)(4) organization actively engaged in supporting the proposed ban on non-citizen voting in Maine.  Plaintiff LIBERTY INITIATIVE FUND is helping to fund the drive to collect the required number of valid signatures for the Referendum and assisting Plaintiff WE THE PEOPLE PAC in identifying and recruiting a team of professional petition circulators, most of whom are residents outside the State of Maine.  Plaintiff LIBERTY INITIATIVE FUND is the original national proponent of the effort to institute bans on non-citizen voting through state ballot initiatives and referendums.  Plaintiff LIBERTY INITIATIVE FUND mission is to promote and support the empowerment of citizens through the use of the initiative and referendum process and intend to remain active in the State of Maine indefinitely.  Plaintiff LIBERTY INITIATIVE FUND is headquartered at: 13168 Centerpointe Way, Suite 202, Woodbridge, VA  22183.

19.     Plaintiff NICHOLAS KOWALSKI is a professional petition circulator who would like to help circulate the petition sponsored by Plaintiff WE THE PEOPLE PAC to prohibit non-citizen voting in the State of Maine but is prohibited from doing so by the challenged statute.  Plaintiff NICHOLAS KOWALSKI is a resident of the State of Michigan residing at 3568 Warringham Avenue, Waterford, MI  48329.

20.     Defendant MATTHEW DUNLAP is the current Secretary of State of the State of Maine and is made a Defendant solely in his official capacity.  Defendant MATTHEW DUNLAP is the Secretary of State until January 4, 2020.  Defendant MATTHEW DUNLAP is vested with authority to enforce the statutory provisions challenged in this action.  Plaintiffs understand that a new Secretary of State will be installed shortly and, accordingly, make it clear that Plaintiffs intend that the successor of Defendant MATTHEW DUNLAP shall also be made a Defendant in her own official capacity as the Secretary of State of the Maine as Defendant DUNLAP's successor-in-office.  At all relevant times, Defendant MATTHEW DUNLAP is a state actor within the meaning of 42 U.S.C. §1983.  Defendant DUNLAP's office is located at 148 State House Station, Augusta, ME  0433-0148 and Nash School Building, 103 Sewell Street, 2nd Floor, Augusta, ME.

21.     Defendant JULIE FLYNN is the current Deputy Secretary of State of Maine in charge of the Bureau of Corporations, Elections and Commissioners – the office that Plaintiffs are required to file their petitions.  Defendant FLYNN is made a Defendant solely in her official capacity.   Defendant FLYNN is direct in charge with enforcing the statutory provisions challenged in this action.  At all relevant times, Defendant FLYNN is a state actor within the meaning of 42 U.S.C. §1983.  Defendant FLYNN's office is located at 101 State House Station, Augusta, ME and at Burton Cross Building, 111 Sewell Street, 4th Floor, Augusta, ME.

## RELEVANT FACTUAL ALLEGATIONS

22.     The State Constitution of Maine at Article IV, Part Third, Sections 17 and 18 provide the ability of the citizens of Maine to sign petitions to veto laws passed upon the conclusion of a legislative session (hereinafter a "People's Veto") and to directly propose legislation which, if not adopted verbatim by the next legislative session, is placed on the general election ballot to be considered by the voters for adoption (hereinafter the "Referendum"), giving the voters of Maine the authority to directly circumvent certain legislative powers otherwise vested in the state legislature and Governor by the Maine Constitution.

23.     In general, the Maine Constitution requires, both for the People's Veto and the Referendum process, that petitions containing the signatures of Maine voters equal in number to 10% of the votes cast in the last Gubernatorial election to be collected and filed with Defendant Secretary of State within certain specified time periods.

24.     Pursuant to MRS Title 21-A, Chapter 11, Section 902, circulators of Referendum and People's Veto petitions are required to sign the petition and verify by oath or affirmation before a notary public or other person  authorized by law to administer oaths or affirmations that the circulator personally witnessed all of the signatures to the petition and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports tom be and that each signature authorized under section 153-A was made by the authorized signer in the presence and at the direction of the voter.  After administering the oath to the circulator, the notary public or other authorized person must sign the notarial certificate on the petition while in the presence of the circulator. After the petition is signed and verified in this manner, the petition must be submitted to the registrar for certification in accordance with the Constitution of Maine, Article IV, Part Third, Section 20.

25.     According to the "Maine Notary Public and Resource Guide," a notary public must make sure the signer provides proper identification.  Identification credentials must have a photograph to properly identify the signer.  The Secretary of State strongly encourages Notaries Public to accept only government issued credentials.

26.     In addition to the requirements imposed by the state constitution for the lawful circulation of the People's Veto and Referendum petitions, the state legislature imposes the following statutory requirements which are unconstitutional under both the First and Fourteenth Amendments to the United States Constitution and the Maine Constitution (hereinafter the "Challenged Provisions"):

(A)     MRS Title 21-A, Chapter 11 Section 903-A requires that petitions for a People's Veto and Referendum may only be circulated by a registered voter of Maine;

(B)     MRS Title 21-A, Chapter 11, Section 903-A requires that petitions for a People's Veto and Referendum may only be circulated by a resident of the State of Maine;

(C)     MRS Title 21-A, Chapter 11, Section 903-A (4)(c) requires circulators of a People's Veto and Referendum petition to sign an affidavit attesting that the circulator was a resident of the State of Maine and a registered voter in the State at the time of circulating the petition;

(D)     MRS Title 21-A, Chapter 11, Section 903-A (5) and Section 903-C (1)(D) requires petition sponsors who pay circulators anything beyond travel expenses to provide a list to Defendant Secretary of State of the names of all such paid circulators, which list is subject to public inspection; and

(E)     MRS Title 21-A, Chapter 11, Section 901-A (2) requires that petition circulators print their names in a space designated by Defendant Secretary of State on each page

that that contains space intended for voter signatures, thereby requiring that petition circulators publicly identify themselves to the public at the time they circulate a Referendum and or People's Veto petition.

27.     None of the Challenged Provisions are contained in the Constitution of Maine:

(A)     The Constitution of Maine does not require circulators of a People's Veto or Referendum petition to be registered voters;

(B)     The Constitution of Maine does not require circulators of a People's Veto or Referendum petition to be a resident of the State of Maine;

(C)     The Constitution of Maine does not require petition sponsors file the names of paid circulators with Defendant Secretary of State for public inspection; and

(D)     The Constitution of Maine does not require petition circulators to publicly identify their names at the time they circulate a People's Veto or Referendum petition to the voters.

28.     All of the Challenged Provisions are additional statutory provisions beyond the requirements established by the state constitution and added by the state legislature and Governor to weaken the ability of the citizens of Maine to organize and efficiently exercise their rights both under the First and Fourteenth Amendments to the United States Constitution, but also under the Maine Constitution.

29.     Defendants continue to enforce the Challenged Provisions despite the fact that the United States Supreme Court has expressly held that the requirement that circulators of referendum petitions must be registered voters is unconstitutional under the First and Fourteenth Amendments to the United States Constitution and regulations which reduce the pool of available circulators impose severe restrictions on rights guaranteed under the First Amendment

to the United States Constitution and are subject to strict scrutiny analysis and constitutional only if they are narrowly tailored to advance a compelling governmental interest.

30.     Plaintiffs WE THE PEOPLE PAC and STATE REPRESENTATIVE BILLY BOB FAULKINGHAM are currently lawfully sponsoring and circulating a petition to force the state legislature to adopt verbatim the proposed ban on all non-citizen voting in the State of Maine or place the question on the next general election ballot as a direct initiative question to be decided by the voters of Maine.

31.     Plaintiffs must collect and file 63,067 signatures on their Referendum petitions in order to force the non-citizen voting to be either adopted by the Maine legislature or be placed on the general election ballot.

32.     The U.S. citizen voting Referendum petitions currently being circulated by Plaintiffs WE THE PEOPLE PAC and STATE REPRESENTATIVE BILLY BOB FAULKINGHAM must be filed on or before February 26, 2021.

33.     Plaintiff NICHOLAS KOWALSKI is a professional petition circulator who is a resident of the State of Michigan who wants to help circulate Plaintiffs' citizen voting only initiative in Maine, but is forbidden from doing so as a direct result of the Challenged Provisions.

34.     Plaintiffs WE THE PEOPLE PAC, STATE REPRESENTATIVE BILLY BOB FAULKINGHAM and LIBERTY INITIATIVE FUND wish to hire Plaintiff NICHOLAS KOWALSKI, and other out-of-state professional petition circulators to collect as many signatures as possible on their petitions and to engage in as much direct speech with the voters of Maine during the circulation of their citizen only voting petition which is directly limited as a result of the Challenged Provisions.

35.     Plaintiffs WE THE PEOPLE PAC, STATE REPRESENTATIVE BILLY BOB

FAULKINGHAM and LIBERTY INITIATIVE FUND would also like to hire and/or recruit Maine college students who are legal residents of other states and/or who are not registered voters of Maine and are, therefore, prohibited from circulating Plaintiffs' petitions as a direct result of the Challenged Provisions.

36.     On September 7, 2020, the Maine Federation of College Republicans sponsored a "Citizen Initiative Kickoff and Lobster Dinner" which Governor Paul Le Page attended as the special guest to support Plaintiffs' U.S. citizen only voting initiative.  Many of the College Republicans who attend Maine colleges and support Plaintiffs' citizen voting initiative are not legal residents of the State of Maine and are not registered voters of the State of Maine and are prohibited from circulating Plaintiffs' petitions as a direct result of the Challenged Provisions.

37.     All of the out-of-state professional circulators that Plaintiffs WE THE PEOPLE PAC, STATE REPRESENTATIVE BILLY BOB FAULKINGHAM and LIBERTY INITIATIVE FUND want to hire to circulate their petitions are willing to accept and submit to the jurisdiction of the State of Maine for the purpose of any investigation and/or prosecution of the petitions they circulate and file as a condition precedent to being able to lawfully circulate Referendum petitions in the State of Maine.

38.     Plaintiff NICHOLAS KOWALSKI is willing to submit to the jurisdiction of the State of Maine for any investigation and/or prosecution of petitions he may file in order to be able to lawfully circulate People's Veto and Referendum petitions in the State of Maine.

39.     MRS Title 21-A, Chapter 11 Section 903-C(A)(1)(D) requires Plaintiff WE THE PEOPLE PAC to file a "list containing the names of all individuals hired by the petition organization to assist in circulating petitions or in organizing, supervising or managing the circulation….The list must be updated and resubmitted to the Secretary of State when the

12

petitions are filed pursuant to the Constitution of Maine, Article IV, Part Third, Section 17 or 18."

40.     All of the out-of-state professional circulators that Plaintiffs WE THE PEOPLE PAC, STATE REPRESENTATIVE BILLY BOB FAULKINGHAM and LIBERTY INITIATIVE FUND want to hire to circulate their petitions are willing to register with the State of Maine and produce valid photo identification to establish their address for the purpose of any service of process as part of any post-filing investigation and/or prosecution, but not for public identification.

41.     Plaintiff NICHOLAS KOWALSKI is willing to register with the State of Maine and produce valid photo identification to establish his address for the purpose of any service of process as part of any post-filing investigation and/or prosecution, but not for public identification.

42.     As of November 2, 2020, there are a reported 146,997 unregistered, voter eligible citizens of Maine who are not permitted to assist Plaintiffs to circulate their Referendum petition as a direct result of the Challenged Provisions.  *See*, https://www.wmtw.com/article/nonprofit-urges-same-day-registration-for-eligible-but-unregistered-maine-voters/34556143

43.     The Challenged Provisions make it less likely that Plaintiffs can collect the required number of signatures to file their Referendum petitions because the Challenged Provisions limit Plaintiffs from hiring and/or utilizing otherwise willing petition circulators to collect the required number of signatures to file their Referendum petitions.

44.     The Challenged Provisions make it less likely that Plaintiffs can collect the required number of signatures before the February 26, 2021 deadline because they limit the number of professional petitions circulators available to be hired by Plaintiffs forcing Plaintiffs

to rely on less reliable volunteer efforts to collect the required number of petition signatures on their Referendum petitions.

45.     The Challenged Provisions increase the costs of circulating Referendum petitions because Plaintiffs WE THE PEOPLE PAC, STATE REPRESENTATIVE BILLY BOB FAULKINGHAM and LIBERTY INITIATIVE FUND cannot employ professional circulators who are willing to circulate their Referendum and/or People's Veto petitions for a lower per-signature cost than Maine circulators who are residents of Maine.

46.     The Challenged Provisions prohibit over 330 million U.S. citizens from being able to lawfully engage in core political speech on issues that are important to all Americans in the State of Maine.

47.     The Challenged Provisions drastically limit the pool of available persons able to lawfully carry Plaintiffs' speech in favor of a ban on non-citizen voting to the voters of Maine.

48.     The Challenged Provisions limit the number of Maine citizens that Plaintiffs can reach with their message in favor of a ban on non-citizen voting.

49.     The Challenged Provision limit the number of hours that Plaintiffs can circulate their Referendum petition to the voters of Maine.

50.     The Challenged Provisions limited the total quantum of speech that Maine voters can receive on the issue of banning non-citizen voting.

51.     The Challenged Provisions are not narrowly tailored to advance a compelling governmental interest and cannot survive strict scrutiny analysis.

52.     The Challenged Provisions fail to advance any legitimate regulatory interest when out-of-state petition circulators are willing to both submit to the state's jurisdiction and register with the State of Maine, without public identification, as a condition precedent to being able to

lawfully circulate Referendum and People's Veto petition in the State of Maine.

53.     Defendants do not require Maine residents to notify Defendants of their address if they decide to leave the state after filing Referendum and People's Veto petitions with Defendants.

54.     Defendants do not require Referendum and/or People's Veto petition sponsors to file the name of volunteer petition circulators.

55.     The Challenged Provisions are not imposed on the circulation of candidate petitions in the State of Maine.

56.     Nonresidents of Maine are lawfully permitted to lobby Maine legislators which creates a clear inconsistency in the two processes.

57.     Defendants' enforcement of the Challenged Provisions is the direct and proximate cause of the impairment of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and the Maine State Constitution.

58.     Article I, Section 4 of the Constitution of the State of Maine provides, in relevant part that: "Every citizen may freely speak, write and publish sentiments on any subject, being responsible for the abuse of this liberty…."

59.     Plaintiffs have no other adequate remedy at law.

## COUNT I
(Facial Challenge to Voter Registration Requirement to Circulate Referendum and People's Veto Petitions Under the First and Fourteenth Amendments to the United States Constitution)

60.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

61.     The circulation of Referendum and People's Veto petitions is "core political speech" protected under the First and Fourteenth Amendments to the United States Constitution.

62.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A that a circulator of a Referendum or People's Veto petition must be a registered voter of the State of Maine limits the number of available speakers available to carry Plaintiffs' message to the voters of Maine without impelling cause in violation of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

63.     The First and Fourteenth Amendments to the United States Constitution protect the rights of free speech afforded to unregistered Maine residents and non-residents alike.

64.     The requirement imposed by MRS Title 21-A, Chapter 11, Section 903-A that a circulator of a Referendum and/or People's Veto petition must be a registered voter of the State of Maine is unconstitutional under the holding of the United States Supreme Court decision in *Buckley v. American Constitutional Law Found*., 525 U.S. 182 (1999).

65.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A that a circulator of a Referendum or People's Veto petition must be a registered voter of the State of Maine imposes a severe impairment of rights guaranteed to Plaintiffs.

66.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A that a circulator of a Referendum or People's Veto petition must be a registered voter of the State of Maine is not narrowly tailored to advance a compelling governmental interest.

67.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A that a circulator of a Referendum or People's Veto petition must be a registered voter of the State of Maine fails to advance a legitimate regulatory interest.

68.     Accordingly, Defendants' enforcement of the voter registration requirement of MRS Title 21-A, Chapter 11 Section 903-A is the direct and proximate cause of the impairment of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States

Constitution for which all Plaintiffs request relief.

**COUNT II**

(As Applied Challenge to the Residency Requirement to Circulate Referendum and People's Veto Petitions Under the First and Fourteenth Amendments to the United States Constitution)

69.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

70.     The circulation of Referendum and People's Veto petitions is "core political speech" protected under the First and Fourteenth Amendments to the United States Constitution.

71.     The requirement imposed by MRS Title 21-A, Chapter 11, Section 903(A) that a circulator of a Referendum or People's Veto petition must be a resident of the State of Maine limits the number of available speakers available to carry Plaintiffs' message to the voters of Maine without impelling cause in violation of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

72.     The First and Fourteenth Amendments to the United States Constitution protect the rights of free speech afforded to Maine residents and non-residents alike.

73.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A(a) that a circulator of a Referendum or People's Veto petition must be resident of the State of Maine imposes a severe impairment of rights guaranteed to Plaintiffs.

74.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A that a circulator of a Referendum or People's Veto petition must be a resident of the State of Maine is not narrowly tailored to advance a compelling governmental interest when the State of Maine can more narrowly require that out-of-state residents must submit to the jurisdiction of the State of Maine and/or register with the State of Maine before an out-of-state petition circulator may lawfully circulate a Referendum or People's Veto petition rather than the blanket ban on out-of-state circulators challenged in this action.

75.     The requirement imposed by MRS Title 21-A, Chapter 11 Section 903-A that a circulator of a Referendum or People's Veto petition must be a resident of the State of Maine fails to advance a legitimate regulatory interest when the State of Maine can more narrowly require that out-of-state residents must submit to the jurisdiction of the State of Maine and/or register with the State of Maine before an out-of-state petition circulator may lawfully circulate a Referendum or People's Veto petition rather than the blanket ban on out-of-state circulators challenged in this action.

76.     Accordingly, Defendants' enforcement of the residency requirement of MRS Title 21-A, Chapter 11 Section 903-A is the direct and proximate cause of the impairment of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution as applied to out-of-state petition circulators willing to submit to the jurisdiction of the State of Maine and/or register with the State of Maine as a condition precedent to lawful permission to circulate Referendum and People's Veto petitions in the State of Maine for which all Plaintiffs request relief.

## **COUNT III**
(Facial Challenge to Affidavit Requirement Imposed on Circulators of Referendum and People's Veto Petitions Attesting that they Are Registered Voters and Residents of Maine at the Time they Circulated the Petition in Violation of the First and Fourteenth Amendments to the United States Constitution)

77.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

78.     MRS Title 21-A, Chapter 11, Section 903-A(4)(c) requires circulators of a People's Veto and Referendum petition to sign an affidavit attesting that the circulator was a resident of the State of Maine and a registered voter in the State at the time of circulating the petition.

79.     The requirement that a circulator of a Referendum and/or People's Veto petition must be a registered voter of the State of Maine is unconstitutional under the holding of the United

States Supreme Court decision in *Buckley v. American Constitutional Law Found.*, 525 U.S. 182 (1999).

80.     The requirement that circulators must sign an affidavit that they are registered voters and resident of Maine are unconstitutional for the same reasons set forth in Counts I and II above as the affidavit requirement is the enforcement mechanism for the voter registration and Maine residency requirements of imposed under MRS Title 21-A, Chapter 11, Section 903(A) and the mechanism giving rise to criminal penalties under MRS Title 21-A, Chapter 11, Section 904(6).

81.     Accordingly, the requirement that circulators of Referendum and People's Veto petitions must sign an affidavit attesting that they were registered voters and resident of the State of Maine is facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution from which Plaintiffs request relief.

**<u>COUNT IV</u>**
(As Applied Challenge to Affidavit Requirement Imposed on Circulators of Referendum and People's Veto Petitions Attesting that they Are Registered Voters and Residents of Maine at the Time they Circulated the Petition in Violation of the First and Fourteenth Amendments to the United States Constitution)

82.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

83.     MRS Title 21-A, Chapter 11, Section 903-A(4)(c) requires circulators of a People's Veto and Referendum petition to sign an affidavit attesting that the circulator was a resident of the State of Maine and a registered voter in the State at the time of circulating the petition.

84.     The requirement that circulators must sign an affidavit that they are registered voters and resident of Maine are unconstitutional for the same reasons set forth in Counts I and II above as the affidavit requirement is the enforcement mechanism for the voter registration and Maine residency requirements of imposed under MRS Title 21-A, Chapter 11, Section 903(A), and the mechanism giving rise to criminal penalties under MRS Title 21-A, Chapter 11, Section

904(6).

85.     Accordingly, to the extent that the requirement that circulators of Referendum and People's Veto petitions must be residents of the State of Maine is unconstitutional only as applied to out-of-state circulators willing to submit to the jurisdiction of the State of Maine to lawfully circulate petitions in Maine,  the requirement that circulators of Referendum and People's Veto petitions must sign an affidavit attesting that they were registered voters and residents of the State of Maine is unconstitutional under the First and Fourteenth Amendments to the United States Constitution as applied to out-of-state petition circulators willing to submit to the jurisdiction of the State of Maine as a condition precedent to the circulation of Referendum and People's Veto petitions, from which Plaintiffs request relief.

### COUNT V
(Facial Challenge to Requirement that Sponsors of Referendum and/or People's Veto Petitions Disclose the Names of Paid Petition Circulators to Defendant Secretary of State for Public Inspection)

86.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

87.     The requirement imposed by MRS Title 21-A, Chapter 11, Sections 903-A (5) and 903-C (1)(D) on sponsors of Referendum and People's Veto petitions to file the names of paid petition circulators with Defendant Secretary of State for public inspection is unconstitutional under the holding of the United States Supreme Court decision in *Buckley v. American Constitutional Law Found.*, 525 U.S. 182 (1999).

88.     The requirement imposed by MRS Title 21-A, Chapter 11, Sections 903-A (5) and 903-C (1)(D) on sponsors of Referendum and People's Veto petitions to file the names of paid petition circulators with Defendant Secretary of State for public inspection imposes a severe burden on speech protected under the First and Fourteenth Amendments to the United States

Constitution which is not narrowly tailored to advance a compelling governmental interest or important regulatory purpose.

89.     Accordingly, the requirement imposed by MRS Title 21-A, Chapter 11, Sections 903-A (5) and 903-C (1)(D) on sponsors of Referendum and People's Veto petitions to file the names of paid petition circulators with Defendant Secretary of State for public inspection is unconstitutional under the First and Fourteenth Amendments to the United States Constitution for which all Plaintiffs demand relief.

### COUNT VI
(Facial Challenge to Requirement that Circulators of Referendum and/or People's Veto Petitions Disclose their Names on Each Page of a Petition that Contains Space Intended for Voter Signatures in a Space Designated by Defendant Secretary of State)

90.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

91.     The requirement imposed by MRS Title 21-A, Chapter 11, Section 901-A (2) that a circulator of Referendum and/or People's Veto petition identify his or her name and unique identifying number on each page of a petition that contains space intended for voter signatures is unconstitutional under the holding of the United States Supreme Court decision in *Buckley v. American Constitutional Law Found*., 525 U.S. 182 (1999).

92.     The requirement imposed by MRS Title 21-A, Chapter 11, Section 901-A (2) that a circulator of a Referendum and/or People's Veto petition identify his or her name and unique identifying number on each page of a petition that contains space intended for voter signatures imposes a severe burden on speech protected under the First and Fourteenth Amendments to the United States Constitution which is not narrowly tailored to advance a compelling governmental interest or important regulatory purpose.

93.     Accordingly, the requirement imposed by MRS Title 21-A, Chapter 11, Section 901-A (2) that a circulator of Referendum and/or People's Veto petition identify his or her name

and unique identifying number on each page of a petition that contains space intended for voter signatures is unconstitutional under the First and Fourteenth Amendments to the United States Constitution for which all Plaintiffs demand relief.

## COUNT VII
(As Applied Challenge to Requirement that Circulators of Referendum and/or People's Veto Petitions Disclose their Names on Each Page of a Petition that Contains Space Intended for Voter Signatures in a Space Designated by Defendant Secretary of State)

94.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

95.     The requirement imposed by MRS Title 21-A, Chapter 11, Section 901-A (2) that a circulator of Referendum and/or People's Veto petition identify his or her name and unique identifying number on each page of a petition that contains space intended for voter signatures is unconstitutional under the holding of the United States Supreme Court decision in *Buckley v. American Constitutional Law Found.*, 525 U.S. 182 (1999).

96.     The requirement imposed by MRS Title 21-A, Chapter 11, Section 901-A (2) that a circulator of a Referendum and/or People's Veto petition identify his or her name and unique identifying number on each page of a petition that contains space intended for voter signatures imposes a severe burden on speech protected under the First and Fourteenth Amendments to the United States Constitution which is not narrowly tailored to advance a compelling governmental interest or important regulatory purpose.

97.     Plaintiff NICHOLAS KOWALSKI's right to engage in anonymous political speech is protected under the First and Fourteenth Amendments to the United States Constitution under the holding of the United States Supreme Court's decisions in *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) and *Buckley*.

98.     Plaintiff NICHOLAS KOWALSKI wants to be able to circulate the Referendum Petition sponsored by PLAINTIFFS WE THE PEOPLE PAC and STATE REPRESENTATIVE

BILLY BOB FAULKINGHAM without making his name public and subjecting himself to the threat of harassment by those who oppose the citizen only voting initiative in Maine.

99.     Accordingly, as applied to Plaintiff NICHOLAS KOWALSKI, the requirement imposed by MRS Title 21-A, Chapter 11, Section 901-A (2) that a circulator of Referendum and/or People's Veto petition identify his or her name and unique identifying number on each page of a petition that contains space intended for voter signatures is unconstitutional under the First and Fourteenth Amendments to the United States Constitution for which all Plaintiffs demand relief.

## COUNT VIII
(Pendent State Law Claim Under the Constitution of the State of Maine)

100.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

101.     The requirements that only registered voters and residents of the State of Maine may circulate Referendum and People's Veto petitions limit the unfettered right established by the Constitution of Maine, Article IV, Part Third, Section 17 and 18.

102.     Accordingly, the voter registration and residency requirement imposed under MRS Title 21-A, Chapter 11, Section 903(A) and the cognate affidavit requirement imposed on Referendum and People's Veto petition circulators under MRS Title 21-A, Chapter 11, Section 903-A(4)(c) are unconstitutional under Article IV, Part Third, Section 17 and 18 of the Constitution of Maine, from which all Plaintiffs request relief.

## COUNT IX
(Pendent State Law Claim the Constitution of the State of Maine)

103.     Plaintiffs reassert and allege each preceding paragraph as if set forth fully herein.

104.     The requirements that only registered voters and residents of the State of Maine may engage in the "core political speech" of circulating Referendum and People's Veto petitions

which they are in the State of Maine limit the unfettered right established by Article 1, Section 4 of the Constitution of the State of Maine.

105.     Accordingly, the voter registration and residency requirement imposed under MRS Title 21-A, Chapter 11, Section 903(A) and the cognate affidavit requirement imposed on Referendum and People's Veto petition circulators under MRS Title 21-A, Chapter 11, Section 903-A(4)(c) are unconstitutional under Article I, Section 4 of the Constitution of Maine, from which all Plaintiffs request relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 903(A) is unconstitutional under the First and Fourteenth Amendments to the United States Constitution to the extent it requires that petitions for a Referendum and People's Veto may only be circulated by a registered voter of the State of Maine;

b.     Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 903-A is unconstitutional under the First and Fourteenth Amendments to the United States Constitution to the extent it requires that petitions for a Referendum and People's Veto may only be circulated by a resident of the State of Maine, as applied to out-of-state circulators willing to submit to the jurisdiction of the State of Maine for purposes of investigation and/or prosecution of any petition filed by the out-of-state circulator;

c.     Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 903-A (4)(c), is unconstitutional under the First and Fourteenth Amendments to the United States Constitution to the extent it requires circulators of a Referendum and People's Veto petition to sign an affidavit attesting that the circulator was a resident of the State and a registered voter of

24

Maine at the time of circulating the petition.

d.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Sections 903-A

(5) and 903-C (1)(D) are unconstitutional under the First and Fourteenth Amendments to the

United States Constitution to the extent it requires sponsors of Referendum and/or People's Veto

petitions to file the names of paid circulators, for public inspection, with Defendant Secretary of

State.

e.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 901-A (2)

is unconstitutional under the First and Fourteenth Amendments to the United States Constitution

to the extent that it requires circulators of Referendum and/or People's Veto petitions to print his

or her name on each page of a petition that contains space intended for voter signatures.

f.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 903-A is

unconstitutional under the Constitution of the State of Maine to the extent it requires that

petitions for a Referendum and People's Veto may only be circulated by a registered voter of the

State of Maine;

g.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 903-A is

unconstitutional under the Constitution of the State of Maine to the extent it requires that

petitions for a Referendum and People's Veto may only be circulated by a resident of the State of

Maine, as applied to out-of-state circulators willing to submit to the jurisdiction of the State of

Maine for purposes of investigation and/or prosecution of any petition filed by the out-of-state

circulator;

h.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 903-

A(4)(c), is unconstitutional under the Constitution of the State of Maine to the extent it requires

circulators of a Referendum and People's Veto petition to sign an affidavit attesting that the

circulator was a resident of the State and a registered voter of Maine at the time of circulating the petition.

i.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Sections 903-A (5) and 903-C (1)(D) are unconstitutional under the Constitution of Maine to the extent it requires sponsors of Referendum and/or People's Veto petitions to file the names of paid circulators, for public inspection, with Defendant Secretary of State.

j.      Enter a declaratory judgment that MRS Title 21-A, Chapter 11, Section 901-A (2) is unconstitutional under the Constitution of Maine to the extent that it requires circulators of Referendum and/or People's Veto petitions to print his or her name on each page of a petition that contains space intended for voter signatures.

k.      Preliminarily and permanently enjoin Defendants from enforcing MRS Title 21-A, Chapter 11, Section 903-A to the extent it requires that petitions for a Referendum and People's Veto may only be circulated by a registered voter of the State of Maine;

l.      Preliminarily and permanently enjoin Defendants from enforcing MRS Title 21-A, Chapter 11, Section 903-A to the extent it requires that petitions for a Referendum and People's Veto may only be circulated by a resident of the State of Maine, as applied to out-of-state circulators willing to submit to the jurisdiction of the State of Maine for purposes of investigation and/or prosecution of any petition filed by the out-of-state circulator;

m.      Preliminarily and permanently enjoin Defendants from enforcing MRS Title 21-A, Chapter 11, Section 903-A(4)(c), to the extent it requires circulators of a Referendum and People's Veto petition to sign an affidavit attesting that the circulator was a resident of the State and a registered voter of Maine at the time of circulating the petition in conformance with the Orders of this Court;

n.      Preliminarily and permanently enjoin Defendants from enforcing MRS Title 21-A, Chapter 11, Sections 903-A (5) and 903-C (1)(D), to the extent it requires sponsors of Referendum and/or People's Veto petitions to file the names of paid circulators, for public inspection, with Defendant Secretary of State.

o.      Preliminarily and permanently enjoin Defendants from enforcing MRS Title 21-A, Chapter 11, Section 901-A (2) to the extent that it requires circulators of Referendum and/or People's Veto petitions to print his or her name on each page of a petition that contains space intended for voter signatures.

p.      Award Plaintiffs the costs of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988;

q.      Retain jurisdiction of this action and grant Plaintiffs such other relief which may, in the determination of this Honorable Court, be necessary and proper.

Respectfully submitted,


Dated: December 31, 2020          **__/s/ Stephen C. Whiting____**
Stephen C. Whiting, Bar No. 559.
*Counsel to Plaintiffs*
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME  04101
(207) 780-0681
steve@whitinglawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date, a true and correct copy of the foregoing document was caused to be personally served upon all Defendants at their place of business.

Respectfully submitted,

Dated: December 31, 2020              __ **/s/ Stephen C. Whiting** ____
Stephen C. Whiting, Bar No. 559
*Counsel to Plaintiffs*
The Whiting Law Firm
75 Pearl Street,  Suite 207
Portland, ME  04101
(207) 780-0681
steve@whitinglawfirm.com